UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RABBINICAL COUNCIL OF MASSACHUSETTS, *also known as* KVH KOSHER, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 22-CV-11460-AK |
| INTERNATIONAL FOOD PRODUCTS, INC., *doing business as* SABRA FOODS, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON MOTION FOR DEFAULT JUDGMENT**

**A. KELLEY, D.J.**

     Plaintiff Rabbinical Council of Massachusetts, also known as KVH Kosher ("KVH"), is one of the oldest kosher certifying organizations in North America and owns a trademark which it uses to certify that foods conform to kosher dietary laws by licensing the use of its trademark to kosher-qualified food products. [Dkt. 1 at 2-3]. KVH alleges that the defendant, International Food Products, Inc., doing business as Sabra Foods ("Sabra"), formerly a licensee of the Mark, used and continues to use the Mark despite KVH having sent Sabra a cease-and-desist letter demanding that Sabra cease the use of the trademark on its food products due to Sabra's persistent inability to comply with the terms of their license among other breaches. [Id. at 3-4]. KVH obtained an entry of default after Sabra failed to respond to the Complaint or otherwise defend this action and have moved for default judgment. [See Dkt. 6; Dkt. 9; Dkt. 10; Dkt. 11; Dkt. 14]. On September 26, 2023, the Court held an evidentiary hearing on Plaintiff's motion for default judgment. [Dkt. 20]. This included direct examination of witness Rabbi Azriel

1

Blumberg and the admitting of several exhibits. [Id.]. Subsequently, Plaintiff has submitted an affidavit detailing the service of process that was provided to the Defendant in this matter. [Dkt. 21].

For the following reasons, KVH's motion for default judgment [Dkt. 14] is **GRANTED**. The Court enjoins Defendant from its current and future use of KVH's trademark. The Court also imposes actual damages of $175,000 as a disgorgement of Sabra's profits, treble damages in the amount of $525,000, civil penalties in the amount of $54,000, plus attorneys' fees and costs in the amount of $14,829.67, for a total recovery of $593,829.67.

## I. BACKGROUND

Unless otherwise noted, the facts are recited as alleged in KVH's complaint. [See Dkt. 1]. Plaintiff KVH is a Massachusetts unincorporated nonprofit association and one of the oldest kosher certifying organizations in North America, providing trusted kosher product certification that is recognized throughout the world. [Id. at 1-2]. KVH owns United States Patent and Trademark Office Registration Number 1160488 (the "Mark"), and upon inspecting food facilities to determine whether a food product abides by kosher laws, it licenses use of its trademark to kosher qualified food products. [Id. at 3]. For foods to be considered kosher and certified with the Mark, all of the ingredients and sub-units in a food product must conform to Jewish dietary laws, and foods must be processed on kosher equipment. [Id. at 2]. Pronouncing food products as kosher entails a meticulous examination of the products themselves as well as all the products and processes related to food preparation in order to ensure that they abide by the strict standards and highest level of quality required by kosher laws. [Id. at 2-3].

Defendant Sabra was previously a licensee of the Mark. [Id. at 3]. However, on March 16, 2016, KVH issued a cease-and-desist letter to Sabra demanding that Sabra cease the use of its

trademark on its food products by April 30, 2016, due to Sabra's persistent inability to comply with the terms and conditions of their license, for non-payment of fees, for adding new ingredients to their products without informing KVH, and for failing to take corrective actions in a timely manner as required by KVH. [Id. at 3-4]. Despite receiving KVH's cease-and-desist, Sabra continues to use KVH's Mark on at least one KVH product without authorization or license from KVH, a fact which was brought to KVH's attention. [Id. at 4]. After discovering Sabra's continued unauthorized use of the Mark, KVH provided written notice to Sabra of its continued violation of both federal and state laws on May 31, 2022, and demanded that Sabra immediately cease-and-desist, which Sabra failed to do. [Id.].

On September 9, 2022, KVH filed its complaint against Sabra, seeking injunctive and monetary relief. [Dkt. 1]. In its supplemental filing, Plaintiff detailed the manner in which it executed service. [Dkt. 21]. First, Attorney John Diefenbach of Foscolo, PLLC ("Foscolo") emailed a demand letter to Pierre Saroufim, an agent on behalf of Sabra. [Id. at ¶ 3]. Second, KVH hired ABC legal to assist with service, and deputy sheriff certified and returned on October 12, 2022, that a true and attested copy of the summons and complaint was hand-delivered to Rita Gebrael, who was the clerk and agent at the time of service for Defendant at 454 High Plain Street, Walpole MA 02081. [Id. at ¶ 5]. Sabra Foods is a family-owned business whose principal place of business is at 454 High Plain Street, Walpole MA 02081. [Id. at ¶ 6]. Rita Gebrael, who is the wife of Pierre Saroufim, works for Sabra Foods and accepted service on behalf of the company. [Id.]. A week later, Saroufin participated in a call with Foscolo attorneys where he confirmed receipt of the complaint and summons and confirmed Defendant's address was 454 High Plain Street, Walpole MA 02081. [Id. at ¶¶ 7-8]. The High Street address does not have a mailbox which is why 422B Walpole St, P.O. Box 222, Norwood, MA 02062 is

officially recorded with the Secretary of State. [Id. at ¶ 8]. Nevertheless, Saroufim physically accepts mail that is sent for signature at the High Street address. [Id.].

KVH brings three claims against Sabra: (1) dilution of its famous mark in violation of § 43(c) of the Lanham Act; (2) false designation of origin in violation of § 43 of the Lanham Act; and (3) violation of Mass. Gen. Laws ch. 94 § 156: Kosher food; labeling and display; civil penalties. [Id. at 4-7]. KVH served Sabra copies of the complaint on September 9, 2022, and Sabra had until September 30, 2022 to respond. [Dkt. 4; Dkt. 7]. Sabra did not respond. KVH filed a motion for default judgment on January 2, 2023, and requested entry of default on January 17, 2023. [Dkt. 5; Dkt. 6]. On March 20, 2023, the Court denied the motion for default judgment without prejudice due to the two-step process for default judgment under Fed. R. Civ. P. 55 and granted the motion for entry of default; subsequently, the clerk entered default against Sabra for its failure to respond or otherwise defend its case. [Dkt. 8; Dkt. 9]. On April 20, 2023, KVH moved for default judgment in accordance with the Court's standing order on motions for default judgment. [Dkt. 11; Dkt. 14]. The Court held an evidentiary hearing on September 26, 2023 [Dkt. 20] and counsel for KVH sent a letter to Defendant by USPS certified return receipt at 454 High Plain Street, Walpole, MA 02801. [Dkt. 21 at ¶ 9]. Counsel used a certified return receipt to ensure that notice was physically placed in Saroufim's hands. [Id.]. Notice was left at that address, but the authorized recipient refused to accept service of the notice. [Id.].

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide a two-step process for default judgment. See Fed. R. Civ. P. 55. First, the clerk must enter a notation of default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, upon obtaining a

notation of default, the plaintiff must apply to the court for default judgment where the amount of damages is not a "sum certain." See Fed. R. Civ. P. 55(b). The party that has defaulted "is deemed to have admitted all of the allegations in the complaint." CNE Direct, Inc. v. Blackberry Corp., 55 F. Supp. 3d 233, 234 (D. Mass. 2014); see SEC v. Tropikgadget FZE, 146 F. Supp. 3d 270, 275 (D. Mass. 2015) (noting that entry of default "constitutes an admission of all facts well-pleaded in the complaint" (citation omitted)). However, the court independently "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). While the court may set a hearing to determine damages "when the amount is in dispute or is not ascertainable from the pleadings," the court may order default judgment without a hearing where "the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002).

### III. DISCUSSION

KVH has satisfied the first step of the default judgment process. [Dkt. 6; Dkt. 9; Dkt. 10]. The Court therefore must evaluate whether it has shown that Sabra is liable for trademark dilution of famous mark, false designation of origin, and violation of Mass. Gen. Laws ch. 94 § 156. If the Court finds that KVH has made such a showing, it must assess its request for damages.

#### A. Dilution of Famous Mark (15 U.S.C. § 1125(c))

KVH asserts that Sabra began using its Mark, which it claims is a famous mark under § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)), in a manner that caused and continues to cause dilution of the distinctive quality of the Mark. [Dkt. 1 at 5]. It maintains that consumers have

purchased Sabra's products which bear the Mark with the mistaken belief that these products were kosher and certified by KVH, and thus are likely to no longer trust the KVH Mark and may cease to trust the Mark as evidence that products have been properly certified as kosher by KVH in strict compliance with the Jewish dietary laws. [Id.].

The Lanham Act provides that "the owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 45 (1st Cir. 1998) (citing 15 U.S.C. § 1125(c)(1)). "Dilution" is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services." Id. at 47 (citing 15 U.S.C. § 1127). To succeed on a claim for trademark dilution, a plaintiff "has the burden of proof to show (1) that it owns a famous mark, (2) that the defendant is making commercial use of the mark in commerce, (3) that the defendant adopted its mark after the plaintiff's mark became famous, and (4) that the defendant's mark dilutes the plaintiff's famous mark." Motorsport Eng'g, Inc. v. Maserati, S.p.A., 183 F. Supp. 2d 209, 226 (D. Mass. 2001), aff'd sub nom. Motorsport Eng'g, Inc. v. Maserati SPA, 316 F.3d 26 (1st Cir. 2002) (citing Hasbro, Inc. v. Clue Computing, Inc., 66 F.Supp.2d 117, 130 (D.Mass. 1999), aff'd, 232 F.3d 1 (1st Cir. 2000). The two kinds of dilution are tarnishment and blurring. Motorsport Eng'g, 183 F. Supp. 2d at 226. The "sine qua non of tarnishment is finding that plaintiff's mark will suffer negative associations through defendant's use." Id. at 227 (citing Hormel Foods Corp. v. Jim Henson Productions, Inc., 73 F.3d 497, 507 (2nd Cir. 1996)). Blurring "may occur where the defendant uses or modifies *the plaintiff's trademark* to identify *the defendant's goods and services,* raising the possibility that the mark will lose its ability to

6

serve as a unique identifier of the plaintiff's product." Id. (citing Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 43 (2nd Cir. 1994)).

  KVH's pleading, which the defaulting defendant is regarded to have admitted, establishes that KVH has met the first three elements of dilution. KVH has pled sufficient facts to prove elements (1) and (2), that it owns a famous mark and that it is making commercial use of the mark in commerce, as it attests that KVH Kosher is one of the oldest kosher certifying organizations in North America, providing trusted kosher product certification that is recognized throughout the world, and that through KVH, the Rabbinical Council inspects food facilities and licenses the use of its trademark to kosher qualified food products. [Dkt. 1 at 2-3]. Element (3) is met as KVH states that Sabra was previously a licensee of the Mark, meaning Sabra necessarily adopted KVH's Mark after the Mark became famous. [Id. at 3].

  Turning to element (4), that the defendant's mark dilutes the plaintiff's famous mark, we find KVH has pled sufficient facts to meet this element as well. Trademark dilution "has … been applied to the injury that results from the use of a mark by the defendant in a way that detracts from, draws on or otherwise appropriates the goodwill and reputation associated with the plaintiff's mark." Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 494 (1st Cir. 1981). Sabra's use of KVH's mark constitutes both tarnishment and blurring. KVH asserts that consumers have purchased Sabra's products bearing the KVH Mark with the mistaken and/or false belief that such products were certified by KVH, which may lead them to no longer trust the KVH Mark and to cease to trust the Mark as evidence that products have been properly certified as kosher by KVH in strict compliance with Jewish dietary laws. [Dkt. 14-1 at 3]. This fulfills the standard for tarnishment "that plaintiff's mark will suffer negative associations through defendant's use" as the use of the Mark for non-kosher products directly

impacts consumers' trust in KVH's Mark as certification of kosher standard. Motorsport Eng'g, 183 F. Supp. 2d at 227. Additionally, it constitutes blurring as Sabra's use of the Mark for its non-kosher products may affect the Mark's ability to serve as a unique identifier for properly certified kosher products, which is the purpose of KVH's Mark.

Based on the facts alleged, this Court finds that KVH succeeds on its claim that Sabra has violated the Lanham Act through dilution of KVH's famous Mark.

### B.   False Designation of Origin (15 U.S.C. § 1125(a))

KVH further alleges that Sabra's unauthorized use in commerce of KVH's Mark in connection with the production, sale, offering for sale, distribution, and/or advertising of products constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact, which has caused and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Sabra with KVH's Mark or as to the origin, sponsorship or approval by KVH Mark of its products, and which misrepresents the nature, characteristics, or qualities of its products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). [Dkt 1 at 6]. It alleges that Sabra made these false designations, descriptions, and representations with knowledge of their falseness, and that no appropriate corrective action has been initiated by Sabra to remedy the infringement or deal with the infringing products, a continued false designation, description, and representation that has been made by Sabra deliberately. [Id.].

The Lanham Act "provides a remedy for those damaged by another's false designation of origin of a good in commerce" by "prohibit[ing] false and misleading descriptions of products and services in interstate commerce." Purolator, Inc. v. EFRA Distributors, Inc., 687 F.2d 554, 558 (1st Cir. 1982) (citing 15 U.S.C. § 1125(a)). The statute "was designed to protect consumers

and competitors from any duplicitous advertising or packaging which results in unfair competition." Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310 (1st Cir. 2002) (citing 15 U.S.C. § 1125(a)).  Under Section 43(a), "individuals may not falsely misrepresent the origin of goods, whether it be the geographic area, the source, or the manufacturer of the physical 'good' sold to the public." Blake v. Prof'l Coin Grading Serv., 898 F. Supp. 2d 365, 382 (D. Mass. 2012) (citing Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003)).  This provision is "designed to reach, among other things, attempts to appropriate the goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging, which would create the impression that the products of the defendant originated with the plaintiff." Purolator, 687 F.2d at 561.  A "showing that the marks or packaging of defendant create a likelihood of confusion with the products of the plaintiff will be a key to establishing a claim of false designation of origin." Id. (citing Pignons, 657 F.2d at 493).

In assessing likelihood of confusion, courts "have commonly looked to the following factors: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark." Pignons, 657 F.2d at 487.  "Also of special relevance … is the finding of intent by the court" as "while intent is not a necessary element of a false designation of origin claim, it is relevant inasmuch as intent to imitate enhances the likelihood of

successfully inducing confusion among consumers." Purolator, 687 F.2d at 561 (citing Baker v. Simmons Co., 307 F.2d 458, 465 (1st Cir. 1962)).

KVH's alleged facts satisfy a claim of false designation of origin. While Sabra is not through its display of KVH's Mark advertising that its products were manufactured by KVH, the nature of the Mark that KVH bestows upon products is such that the Mark itself conveys information about the products' origin regarding the production processes that must adhere to strict kosher guidelines, which is certified by KVH. Accordingly, the likelihood of confusion regarding the products' origin is high. Regarding the factors, the marks are obviously identical, and due to the relationship between the parties' advertising—with KVH licensing its Mark as a sign of certification—the goods and the classes of prospective purchasers are necessarily identical. As Sabra is deemed to have admitted all facts alleged in the complaint, KVH has established actual confusion in stating that Sabra's use of the Mark has misled the kosher-consuming community into believing Sabra's products have obtained kosher certification from KVH. [Dkt. 1 at 4]. KVH has also established the strength of its Mark as one that is recognized and trusted worldwide. [Id. at 2]. As KVH has alleged that Sabra made and continues to make these false designations and representations, the matter of intent also weighs in KVH's favor. [Id. at 6]. KVH thus succeeds on its claim that Sabra has violated the Lanham Act via false designation of origin.

      **C.**      **Violation of Mass. Gen. Laws ch. 94 § 156: Kosher food; labeling, sale, and display; civil penalties**

KVH claims that Sabra has also violated Mass. Gen. Laws ch. 94 § 156 ("Section 156"): Kosher food; labeling, sale, and display; civil penalties, as by using KVH's Mark on their products, Sabra knowingly displayed and/or advertised to consumers and/or purchasers that Sabra's products are either kosher, kosher for Passover or pareve, or prepared in accordance with

orthodox Jewish religious standards, which caused a reasonable consumer to believe the products sold by Sabra with KVH's mark are kosher, kosher for Passover or pareve, or prepared in accordance with orthodox Jewish religious standards. [Dkt. 1 at 7].

Section 156(a) provides that

> No person shall label, advertising or exposing for sale any can, jar, or other package containing fruit or food of any kind, or unpackaged fruit or food of any kind … and knowingly falsely represent the same to be kosher, kosher for Passover, pareve, or as having been prepared in accordance with orthodox Jewish religious standards either by direct statements, orally or in writing, or by display of the word "Kosher", "Kosher for Passover" or "Pareve" in any language or by the display, advertising, use on a label or on any package of any sign or mark in simulation of such word or words, which might reasonably be calculated to cause a reasonable person to believe that a representation is being made that the food sold is kosher, kosher for Passover or pareve, or prepared in accordance with orthodox Jewish religious standards.

Additionally, § 156(i) states that "[a]ny violation" of this subsection "or any misrepresentation of the identity of a certifying authority shall be an unfair or deceptive act or practice in the conduct of trade or commerce, and any person aggrieved thereby may seek relief under the provisions of section nine of chapter ninety-three A."

Here, Sabra has "label[ed], advertising or exposing for sale" food and "knowingly falsely represent[ed]" it "to be kosher, kosher for Passover, pareve, or as having been prepared in accordance with orthodox Jewish religious standards … by display, advertising, use on a label or on any package of any sign or mark in simulation of such word or words" —the KVH Mark— "which might reasonably be calculated to cause a reasonable person to believe that a representation is being made that the food sold is kosher, kosher for Passover or pareve, or prepared in accordance with orthodox Jewish religious standards." M. G. L. ch. 94 § 156(a). The KVH Mark is by its nature and purpose a sign or mark that identifies a food product as being kosher, and therefore would reasonably be calculated to cause a reasonable person to believe a representation is being made that the food being sold is kosher. Therefore, by the text of the

11

statute, KVH succeeds on its claim that Sabra is in violation of M. G. L. ch. 94 § 156(a): Kosher food; labeling, sale, and display; civil penalties.

### D. Damages

In its request for entry of default judgment, KVH requests both monetary damages and injunctive relief.

#### 1. Monetary Damages

In preparation for the evidentiary hearing, KVH submitted proposed findings of fact which detailed the nature of Sabra's infringement, included an estimate of the damages caused by Sabra, and detailed the facts supporting those conclusions. [Dkt. 18]. After the evidentiary hearing, in which plaintiff's witness described the methodology for their conservative estimate as to their calculation of the amount of damages [Dkt. 20], the Court finds that KVH's assessment of damages is credible and supported by the evidence available in this case. Sabra's profits from its products sold that unlawfully featured the KVH mark was at least $25,000 per year. [Dkt. 18]. This brings its profits for the several years of knowingly violating KVH's trademark rights to $175,000. [Id.]. Under 15 U.S.C. § 1117(a) ("[w]hen a violation of any right of the registrant of a mark … shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled … to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action"); this means that KVH is entitled to recover profits in the amount of $25,000 per year or $175,000. [Dkt. 18]. KVH's attests that its reasonable and necessary attorneys' fees and costs are $14,829.67. [Dkt. 22]. Providing attorneys' fees is authorized pursuant to 15 U.S.C. § 1117(a) ("[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party") and the Court finds that given the work to

prepare this matter, including the complaint, motion for default judgment, and the evidentiary hearing, the amount requested is reasonable.

Civil penalties are authorized pursuant to Mass. Gen. Laws ch. 94 § 156 for knowingly and willfully selling or offering to sell 27 products that falsely featured the KVH mark alongside the words "KOSHER" and "Parve." [Dkt. 18 at 32]. These civil penalties vary between $500 and $2000 per item under Section 156, which amounts to $54,000 if the maximum penalty is imposed. Mass. Gen. Laws ch. 94 § 156(h). Because of the knowing and willful violation, and despite the repeated efforts by KVH to correct course, the Court finds that the maximum penalty of $2,000 per item for a total of $54,000 is appropriate. [Dkt. 20].

KVH also seeks treble damages pursuant to 15 U.S.C. § 1117(b) ("In assessing damages … in a case involving use of a counterfeit mark or … the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages"). Here, since Sabra continued to use KVH's mark, despite knowing that KVH no longer approved of its use or of the designation of Sabra's products as Kosher, treble damages are appropriate. Therefore, KVH is entitled to $525,000 in treble damages.

The Court therefore owes a total recovery of $593,829.67.

### 2. Injunctive Relief

KVH requests that Sabra be permanently enjoined from any and all unauthorized use of the KVH Mark including displaying the KVH Mark on its products on its website, that Sabra take immediate corrective actions to remove the infringing products from the marketplace and its website, and that Sabra destroy any and all infringing labels and/or product bearing infringing labels. [Dkt. 14-1 at 4].

Under the Lanham Act, courts have power to grant injunctions "according to the principles of equity" to "prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office" or to prevent a violation under 15 U.S.C. § 1125. 15 U.S.C. § 1116. The standard for issuing a permanent injunction "requires the district court to find that (1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction." A.W. Chesterton Co. v. Chesterton, 128 F.3d 1, 5 (1st Cir. 1997) (citing Indian Motocycle Assoc. III Ltd. Partnership v. Massachusetts Housing Fin. Agency, 66 F.3d 1246, 1249 (1st Cir. 1995)). Here, as Sabra has defaulted, KVH has demonstrated their success on the merits, and so the first element is satisfied. We therefore turn to the other three elements.

Regarding element two, whether the plaintiff will suffer irreparable harm without an injunction, "irreparable harm flows from an unlawful trademark infringement as a matter of law," as "the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992). Accordingly, element two is also satisfied, as irreparable harm is presumed due to Sabra's infringement of KVH's Mark. Turning to the third and fourth elements, the harm to KVH outweighs any harm Sabra might suffer from the imposition of an injunction, and granting an injunction here serves the public interest by preventing injury to the kosher-consuming community due to confusion about the kosher certification status of the foods they may purchase. See Boustany, 42 F. Supp. 2d at 113 (noting that "the public interest almost always favors the granting" of appropriate injunctions in trademark cases and the "relevant consideration is the consumers' interest in not being deceived

or confused about the products they purchase"). Having satisfied all four elements, the equitable relief KVH seeks is justified, and the Court shall grant the injunction.

## IV. CONCLUSION

For the foregoing reasons, KVH's Motion for Default Judgment [Dkt. 14] is **GRANTED**. Sabra is hereby **ENJOINED** from any and all unauthorized use of the KVH Mark including displaying the KVH Mark on its products on its website, and is ordered to: (1) take immediate corrective actions to remove the infringing products from the marketplace and its website, and (2) destroy any and all infringing labels and/or product bearing infringing labels. Sabra is therefore ordered to pay Defendant damages totaling $593,829.67.

**SO ORDERED.**

Dated: October 24, 2023 /s/ Angel Kelley
Hon. Angel Kelley
United States District Judge